No. 99-560

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 387N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

BRADLEY BJARKO,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Kenneth Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Rochelle D. Wilson, Cascade County Public Defender, Great Falls, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Jennifer Anders, Assistant Montana Attorney General;
Brant S. Light, Cascade County Attorney, Susan Brooke, Deputy Cascade County Attorney, Great Falls,
Montana

Submitted on Briefs: May 4, 2000
Decided: December 28, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Bradley Bjarko (Bjarko) appeals from an order entered by the Eighth Judicial District Court, Cascade County, revoking his suspended sentence. We affirm.

1. ¶ Bjarko states the issues on appeal as:

2. ¶1. Did the District Court have authority to revoke Bjarko's suspended sentence because he failed to participate in and complete sex offender treatment while incarcerated?

3. ¶2. Did the District Court violate Bjarko's constitutional rights by imposing a condition of probation which he claims was impossible to complete?

4. ¶Bjarko pled guilty to two counts of sexual assault involving teenage girls under the age of 16. He was committed to the Department of Corrections for 10 years with 5 years suspended on each count to run concurrently on various conditions. Bjarko had a long history of sex offenses. Based on testing and evaluation it was believed that Bjarko was minimizing or rationalizing his deviate tendencies, and that he would benefit from sex offender treatment. As part of the sentence the court ordered Bjarko to obtain sexual offender evaluation at his own expense and comply with all recommendations thereof and that he not be eligible for parole until he completed Phase II of the Sex Offender Treatment Program (Program) at the Montana State

Prison (MSP). The Department of Corrections (Department) was directed to enter Bjarko in the Sex Offender Treatment Program "forthwith."

5. ¶Bjarko entered MSP and began attending Phase I of the Program in August 1997. However, due to an altercation with another inmate, he was reclassified to maximum security, which precluded his continued involvement in the Program. While housed in maximum security he acted out in a sexually deviant manner on at least one occasion, masturbating in the presence of a female guard. Because Phase II of the Program was not available to maximum security inmates, Bjarko failed to complete any part of the Program by his scheduled discharge date of May 24, 1999.

6. ¶Anticipating that Bjarko would discharge his sentence and be released into the community without treatment, the Cascade County Attorney's office filed a petition to revoke Bjarko's suspended sentence on April 21, 1999. The stated grounds for the revocation was a violation of special condition 12, which required that Bjarko complete both Phase I and Phase II of the Program, before being eligible for parole.

7. ¶Arguing that sex offender treatment was an implicit requirement of his probation as well as parole, the State recommended that the suspended sentence be revoked and that the court impose a 5-year sentence with 2 years suspended on each count and that Bjarko be required to make active efforts toward completion of sex offender treatment while in prison. This recommendation was consistent with an agreement between the County Attorney's office and Bjarko's attorney, whereby the prosecutor agreed to recommend a specific sentence in exchange for Bjarko's admission that his conduct violated the conditions originally imposed by the sentencing court. Despite the agreement, however, Bjarko's attorney argued that the court had no authority to revoke his suspended sentence, irrespective of his admissions that sex offender treatment was only a condition of parole eligibility and not a requirement of his probation, i.e., suspended sentence. Defense counsel asked that Bjarko be allowed to proceed with the suspended portion of his sentence and obtain sex offender treatment in the community, though there was no showing Bjarko would be accepted into out-patient treatment.

8. ¶Ultimately the court revoked Bjarko's suspended sentence and committed him to the Department for a period of 5 years, 2 suspended on each count, to run concurrently, and required that the defendant enroll in and diligently pursue and complete both Phase I and Phase II of the Program at the MSP. The Department was ordered to give Bjarko priority for the Program. Bjarko appeals.

Issue 1

1. **¶Did the District Court have authority to revoke Bjarko's suspended sentence because he failed to participate in and complete sex offender treatment while incarcerated?**

2. ¶We generally review a district court's decision to revoke a suspended sentence to determine whether the court abused its discretion and whether the court's decision was supported by a preponderance of the evidence in favor of the State. *State v. Nelson* (1998), 291 Mont. 15, 20, 966 P.2d 133, 135136. Where the issue is whether a court followed statutory requirements applicable to revocation of a suspended sentence, the question raised is a matter of law, and our review is plenary. *Nelson*, 291 Mont. at 20, 966 P.2d at 135-36. We employ the latter standard in the case *sub judice*.

3. ¶Here, through ill-considered sentencing and rehabilitation time lines and conditions, Bjarko could, and indeed, would have, discharged from the MSP without having fulfilled all the conditions imposed at sentencing, regardless of his behavior at the MSP. Notwithstanding, a district court may impose restrictions, conditions and limitations reasonably related to the objectives of rehabilitation and the protection of society. *See* §§ 46-18-101 and 46-18-201, MCA; *State v. Black* (1990), 245 Mont. 39, 46-47, 798 P.2d 530, 534-35. As Bjarko acknowledges, the State may revoke a suspended sentence before a defendant actually begins serving the suspended sentence. *See State v. Sullivan* (1981), 197 Mont. 395, 642 P.2d 1008.

4. ¶Under § 46-18-203, MCA, which sets forth the statutory criteria for revocation of suspended or deferred sentences, the prosecution must prove by a preponderance of the evidence that there has been a violation of the terms and conditions of the suspended sentence. Section 46-18-203(6), MCA. Here, Bjarko admitted a violation of the terms and conditions by his failure to complete the Program set forth in the original conditions of sentencing. The statute then states in pertinent part:

(7)(a) If the judge finds that the offender has violated the terms and conditions of the suspended or deferred sentence, the judge may:

(i) continue the suspended or deferred sentence without a change in conditions;

(ii) continue the suspended sentence with modified or additional terms and conditions;

(iii) revoke the suspension of sentence and require the offender to serve either the sentence

imposed or any lesser sentence; . . . .

1. ¶Bjarko's admitted violation was properly noted by the court in revoking his sentence as indicated by the record. A district court has no power to impose a sentence in the absence of specific statutory authority. *Nelson*, 291 Mont. at 21-22, 966 P.2d at 136-37. Section 46-18-203(7)(a)(iii), MCA, provides the requisite statutory authority under which the District Court acted in this matter. In contrast to *Nelson*, where there was no finding by the trial court that the defendant had violated the terms and conditions of his suspended sentence, Bjarko admitted violating the terms and conditions of his suspended sentence by not completing the Program. The District Court did not err, nor did it abuse its discretion, by finding that Bjarko must complete the sex offender treatment program since it relates to both his need for rehabilitation and society's need for protection. The court therefore had authority to revoke his suspended sentence because he failed to participate in and complete the sex offender program while incarcerated.

## Issue 2

1. **¶Did the District Court violate Bjarko's constitutional rights by imposing a condition of probation which he claims was impossible to complete?**

1. ¶Bjarko claims the actions of the District Court in revoking his suspended sentence violated his due process rights because it would have been impossible for him to complete sex offender treatment during his active sentence. With regard to the nature of due process owed defendants at the sentencing phase of criminal proceedings, this Court has stated:

Montana recognizes that due process applies to sentencing, but the defendant's liberty interest during sentencing is less than that interest during trial. The process that is due, therefore, is not as great as that required by the substantive criminal charges. The defendant is entitled to reasonable notice and an opportunity to be heard during sentencing.

*State v. Miller (1998), 290 Mont. 97, 112-13, 966 P.2d 721, 731.*

1. ¶Here, Bjarko was given advance notice by the State on April 21, 1999, that the State would object to his release from the MSP without his having fulfilled all the conditions of release set forth in his original sentencing. Bjarko must, and from the record apparently has, taken responsibility for his role in hindering his ability to fulfill the conditions of his original sentence. Following the notice given by the State on April 21, 1999, an evidentiary and disposition hearing was held on August 31, 1999, where Bjarko had an extensive opportunity to be heard on the issues presented on appeal. No more is required.

2. ¶Affirmed.


/S/ JAMES C. NELSON


We Concur:


/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER